**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
CARLOS RAMIREZ,

                                       Plaintiff,

                  -against-

HEMPSTEAD UNION FREE SCHOOL
DISTRICT BOARD OF EDUCATION,
HEMPSTEAD BOARD OF EDUCATION,
HEMPSTEAD SCHOOL DISTRICT,
SUSAN JOHNSON, individually and in her
official capacity, BETTY J. CROSS, individually
and in her official capacity, JOANN SIMMONS,
individually and in her official capacity, LAMONT
JOHNSON, individually and in his official capacity,
John and Jane Does 1-50, and Unknown Municipalities
and Departments 1-10,

                                       Defendants.
-----------------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
13-cv-6429 (ADS)(WDW)

**APPEARANCES:**

**The Aboushi Law Firm, PLLC.**
*Attorneys for the Plaintiff*
1441 Broadway, Suite 5036
New York, NY 10018
    By: Aymen A. Aboushi, Esq., Of Counsel

**The Scher Law Firm, LLP**
*Attorneys for the Defendants*
One Old Country Road, Suite 385
Carle Place, NY 11514
    By: Austin Graff, Esq., Of Counsel

**SPATT, District Judge.**

        On November 20, 2013, the Plaintiff Carlos Ramirez (the "Plaintiff") commenced this

action against the Defendants, the Hempstead Union Free School District Board Of Education

("BOE"), Hempstead Board Of Education, Hempstead School District, Susan Johnson, Betty

Cross, JoAnn Simmons, and Lamont Johnson, former and current District employees (collectively the "Defendants"), pursuant to Title VII of the Civil Rights Act of 1964, as codified in 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"); 28 U.S.C 1981 ("Section 1981"); New York Executive Law § 296; New York Civil Service Law § 75; and the Plaintiff's right to freedom of speech under the First Amendment.

The Plaintiff asserts four causes of action. In this regard, he alleges that the Defendants (1) treated the Plaintiff adversely because of his national origin, skin tone, and/or race; (2) aided and abetted each other in discrimination against Hispanic Employees; (3) retaliated against him for opposing allegedly fraudulent conduct within the District; and (4) violated his free speech rights under the First Amendment to the United States Constitution by retaliating against him for raising matters of public concern within the community.

Presently before this Court is the Defendants' motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) on the ground**(s)** that the Plaintiff has failed to state a claim upon which relief can be granted. For the reasons set forth below, the Court denies the Defendants' motion.

# I. BACKGROUND

Unless stated otherwise, the facts relevant to this motion are set forth below and are taken from the amended complaint. For the purpose of deciding this Rule 12(b)(6) motion, the facts are construed in a light most favorable to the Plaintiff.

## A. **Factual Background**

The Plaintiff is of Hispanic origin and an employee of the Defendant, the BOE. The District hired the Plaintiff in October 2010 as the Director of Technology and Chief Information

Officer for the BOE. His sole job function was to maintain and upgrade the BOE's technological capabilities.

The Plaintiff asserts that during his employment, he was instrumental in revitalizing and upgrading the BOE's technological infrastructure and capabilities, providing previously unavailable technological services to each classroom. He also asserts that he thrived under the tenure of the previous superintendent. However, when the Defendant Johnson took office as the new superintendent, Johnson apparently informed the Plaintiff of her desire to replace him because of his race. The Plaintiff further alleges that other employees of Hispanic origin were disciplined or removed from their positions by Johnson, absent any legitimate basis.

**B.  The Plaintiff's Allegations of Misconduct**

 Johnson's employment contract contained a provision whereby she would receive a bonus should she increase the student passing rate within the School District. In addition, an increase in the student passing rate would also secure greater funding for the District. The Plaintiff alleges that, on one particular occasion, he thwarted an attempt by Defendant Johnson to change failing grades to passing grades when he refused to make such changes without the necessary documentation.

Thereafter, Defendant Johnson and non-party Julius Brown, Deputy Superintendent of Schools, requested that the Plaintiff provide consultants working under Johnson with electronic access to the District's student grades. The Plaintiff asserts that he refused to provide the consultants with access to the District's grade database because, to his knowledge, the consultants lacked proper authorization. However, as a result, he allegedly received threats and admonishments from Brown and Defendant Cross, President of the School Board, who were acting on behalf of Johnson. The Plaintiff asserts that he later relented and provided the

consultants with access to the District's grade database. When the Plaintiff reviewed the activity logs for the District's grade database, he learned that the consultant had changed some student grades. The Plaintiff alerted the Defendants and Brown of the changes.

Thereafter, according to the Plaintiff, Johnson and Brown contacted him and insisted that he develop a computer program and algorithm that would automatically elevate failing grades to passing grades. When the Plaintiff refused, Johnson and Brown allegedly threatened him with insubordination and the denial of tenure. The Plaintiff contends that he was thereby harassed into creating the program. As the Director of Technology, the Plaintiff maintains that grade changes are not within the scope of his responsibilities.

The Plaintiff notes that the BOE's rules and regulations mandate that a passing grade shall be 65 or above, and that a passing grade shall be earned by each student. Information pertaining to grade changes is required to be memorialized by protocol on a grade change form and sent to the records office for execution. The District and State rules and regulations require that only teachers and principals may change grades after the completion of the paperwork. Grade alterations are justified by providing legitimate reasons, such as miscalculations of a grade or the completion of extra credit performed by the student.

C. **The Whistleblowing Allegations**

Thereafter, the Plaintiff sent a letter to the Commissioner of the New York State Department of Education and the Superintendent of Nassau County BOCES notifying them of the Defendants' actions. He also notified the BOE by providing them with a copy of the correspondence, which had already been sent to the authorities. The following day, Johnson sent the Plaintiff home from his workplace. His access to the School District's system was restricted, thereby preventing him from performing his job duties. Johnson had a letter delivered to the

Plaintiff, which instructed him that he was no longer permitted on school property without Johnson's express permission, lest he be considered to be trespassing. In addition, the Plaintiff was required to return his school keys and any other school property in his possession.

**D.  The Termination of The Plaintiffs' Employment**

The Plaintiff alleges that the Defendants issued a warning to him for not producing a report on time. The Plaintiff maintains that this report could not be completed due to the Defendants failure to provide him with the necessary information. The Plaintiff alleges that the BOE used this and other fabricated employment issues to obtain a 3-1 vote of the Board to terminate him.

Soon thereafter, the Plaintiff served a Notice of Claim upon all the Defendants. He contends that this action and all the claims set forth in the complaint are not subject to any grievance procedure or protocol, or to any collective bargaining agreement.

**E.  Procedural History**

The Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). He received a statutory right-to-sue letter dated October 22, 2013 from the EEOC. Thereafter, on November 20, 2013, the Plaintiff commenced this action. On December 20, 2013, pursuant to Rule 12(b)(6), the Defendants filed a motion to dismiss the complaint in its entirety for failure to state a claim.

On January 6, 2014, the Plaintiff filed an amended complaint against the Defendants, asserting that the Defendants violated: (1) Title VII; (2) 28 U.S.C § 1981; (3) New York Executive Law § 296; (4) New York Civil Service Law § 75; and (5) the Plaintiff's right to freedom of speech under the First Amendment. On January 8, 2014, the Defendant withdrew

their initial motion to dismiss.  On January 24, 2014, the Defendants filed a second motion to

dismiss pursuant to Rule 12(b)(6) against the amended complaint, which is the motion at issue.

## II.  DISCUSSION

### A.  The Legal Standard on a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss

It is well-established that a complaint should be dismissed under Fed. R. Civ. P. 12(b)(6)

only if it does not contain enough allegations of fact to state a claim for relief that is "plausible

on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed.

2d 929 (2007).  "Determining whether a complaint states a plausible claim for relief will . . . be a

context-specific task that requires the reviewing court to draw on its judicial experience and

common sense."  Harris v. Mills, 572 F. 3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, l556

U.S. 662, 679, 129 S. Ct. 1937, 1949–50, 173 L. Ed. 2d 868 (2009)).

In deciding a motion to dismiss, the Court is required to accept the material facts alleged

in the complaint as true and draw all reasonable inferences in the Plaintiff's favor.  Iqbal, 556

U.S. at 678; Zinermon v. Burch, 494 U.S. 113, 118, 110 S. Ct. 975, 979, 108 L. Ed. 2d 100

(1990); In re NYSE Specialists Secs. Litig., 503 F.3d 89, 91 (2d Cir. 2007).  As such, "[w]hen

there are well-pleaded factual allegations, a court should assume their veracity and . . . determine

whether they plausibly give rise to an entitlement of relief."  Iqbal, 556 U.S. at 679.  However,

"although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet'

'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice.'"  Harris, 572 F.3d at 72

(quoting Iqbal, 556 U.S. at 678).  In its Rule 12(b)(6) analysis, the Court may refer "to

documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of

which judicial notice may be taken, or to documents either in [a] plaintiff['s] possession or of

which [a] plaintiff[ ] had knowledge and relied on in bringing suit." Brass v. Am. Film Tech., Inc., 987 F.2d 142, 150 (2d Cir. 1993); see also Karmilowicz v. Hartford Fin. Servs. Group, 494 F. App'x. 153, 156 (2d Cir. 2012).

**B.  As to Whether The Plaintiff Stated a Claim Under Title VII and 28 U.S.C. 1981**

Title VII of the Civil Rights Act of 1964 provides in pertinent part:

> It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex or national origin.

42 U.S.C. § 2000e–2(a).

Section 1981 states in relevant part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State . . . to make and enforce contracts, . . . and to the full and equal benefit of all the laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a).

Section 1981 claims based on employment discrimination are analyzed under the same standards used for Title VII claims. See, e.g., Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 69 (2d Cir. 2000); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir. 1998).

Generally, courts look to the Supreme Court's ruling in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) when analyzing Title VII claims. In McDonnell Douglas, the Supreme Court set forth the elements that a plaintiff must set forth in order to establish a *prima facie* case at the summary judgment stage.  Under McDonnell Douglas, a plaintiff alleging discrimination based on a protected characteristic must first "establish a *prima facie* case" by "show[ing] (1) that []he was within the protected class, (2) that []he was qualified for the position, (3) that [he] experienced [an] adverse employment action, and (4) that

such action occurred under circumstances giving rise to an inference of discrimination."  Id. (citing Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000)).

On a motion to dismiss, a plaintiff need not plead all the facts necessary to establish a *prima facie* case, but must satisfy the provisions of Fed. R. Civ. P. 8, by making a "short and plain statement of the claim showing the pleader is entitled to relief."  Swierkiewicz v. Sorema N. A., 534 U.S. 506, 515, 122 S. Ct. 992, 999, 152 L. Ed. 2d 1 (2002)(quoting Fed. R. Civ. P. 8(a)(2))); see also Twombly, 550 U.S. at 547 (explicitly affirming the Swierkiewicz pleading standard for employment discrimination cases).  Nevertheless, while a plaintiff need not allege specific facts establishing all the elements of a *prima facie* case under McDonnell Douglas, these elements can still "provide [a helpful] outline of what is necessary to render [a plaintiff's] claims for relief plausible."  Sommersett v. City of New York, No. 09 Civ. 5916 (LTS)(KNF), 2011 WL 2565301, at *5 (S.D.N.Y. June 28, 2011).

The Defendants do not dispute that the Plaintiff belongs to a protected class or that the Plaintiff suffered an adverse employment action in the form of a termination of employment. Rather, they contend that the Plaintiff has not sufficiently alleged: (1) that the Plaintiff was qualified for the position he held, and (2) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.

### 1. The Plaintiff's Qualifications for the Position

This Court must first determine whether the Plaintiff's amended complaint has sufficiently alleged that he was qualified for his position as the BOE's Director of Technology and Chief Information Officer.  "To show 'qualification' sufficiently . . . the plaintiff "need not show perfect performance or even average performance."  Gregory v. Daly, 243 F.3d 687, 696 (2d Cir. 2001).  "[A]ll that is required is that the plaintiff establish basic eligibility for the

position at issue, and not the greater showing that he satisfies the employer . . . Plaintiff must show only that he possesses the basic skills necessary for performance of the job." Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 91 (2d Cir. 2001). "In a discharge case in which the employer has already hired the employee into the job in question, the inference of minimal qualification is, of course, easier to draw than in a hiring or promotion case because, by hiring the employee, the employer itself has already expressed a belief that she is minimally qualified." Gregory, 243 F.3d at 696.

Here, the Plaintiff had already been hired and alleges that he "executed his job functions to a high standard[,]" and that he "thrived under the tenure of the previous superintendent . . . ." (Pl. Am. Compl. ¶¶ 17,19). Furthermore, the Plaintiff alleged that he "was instrumental in revitalizing and upgrading the BOE's technological infrastructure, technical capabilities, and providing previously unavailable technology and infrastructure to each classroom." (Pl. Am. Compl. ¶ 18). Drawing all reasonable inferences in the Plaintiff's favor, the Court finds that the Plaintiff has sufficiently alleged that he possessed the basic skills necessary to perform his job as the Director of Technology and Chief Information Officer and therefore was qualified for his position.

### 2. **The Circumstances Giving Rise to an Inference of Discrimination**

Various circumstances may contribute to a permissible inference of discriminatory intent under Title VII and Section 1981, including:

> the employers continuing, after discharging the plaintiff, to seek applicants from persons of the plaintiff's qualifications to fill that position; or the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.

Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456 (2d Cir. 2001)(quoting Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994)).

Here, the Plaintiff asserts that he has put forth sufficient facts that are necessary to give rise to an inference of national origin discrimination. (Pl. Mem. in Opp. at 17). According to the Plaintiff, "[o]nly the Plaintiff, and other people of Hispanic origin, were terminated, demoted, stripped of their duties, and otherwise maligned when Susan Johnson became superintendent." (Pl. Am. Compl. ¶ 86). The Plaintiff further insists "that there was a scheme to reduce the number of Hispanic employees in the upper echelons of management . . . . and no other ethnic origin was treated in the manner that Hispanics were." (Pl. Opp. at 17).

"To withstand a motion to dismiss, the complaint must contain factual allegations supporting the plausible inference that the employer discriminated against the plaintiff because of the plaintiff's protected characteristics." Kirkweg v. New York City Dep't of Educ., 12 CIV. 2635 (WHP), 2013 WL 1651710, at *3 (S.D.N.Y. Apr. 4, 2013). Under a disparate treatment theory, a plaintiff may raise such an inference of discrimination "by showing that the employer subjected him to disparate treatment [–] that is[,] treated him less favorably than a similarly situated employee outside his protected group." Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000). When considering whether a plaintiff has shown that he was subjected to disparate treatment, the Second Circuit requires that plaintiff demonstrate that he was "similarly situated in all material respects" to the individuals with whom he seeks to compare himself. Id. at 39.

Here, the Plaintiff specifically states that "[a]lmost immediately after taking office, Defendant Johnson informed Plaintiff that she wanted to remove him from his position and install someone else in his stead because of his race." (Pl. Am. Compl. ¶ 22). This alleged

remark evinces a discriminatory state of mind by Johnson and should not be taken as a stray remark. See, e.g., Ostrowski v. Atl. Mut. Ins. Cos., 968 F.2d 171, 182 (2d Cir. 1992)(describing remarks as "stray" when made by persons who are not involved in the pertinent decision-making process); cf. Rose v. New York City Bd. of Educ., 257 F.3d 156, 162 (2d Cir. 2001)(finding a remark to not be considered "stray" where it is made directly to the plaintiff by an immediate supervisor "who has enormous influence in the decision making process.") These factual allegations, when considered in a light most favorable to the Plaintiff, sufficiently support an inference of national origin discrimination.

Therefore, the Court denies the Defendants' motion to dismiss the Plaintiff's national origin discrimination claim pursuant to Title VII and 28 U.S.C § 1981.

## C. As to Whether The Plaintiff States a Claim for Violation of New York Executive Law § 296

In contrast to Title VII, defendants may be held individually liable under the New York State Human Rights Law ("NYSHRL"). See Feingold v. New York, 366 F.3d 138, 157 (2d Cir. 2004); see also Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995). NYSHRL provides that "it shall be an unlawful discriminatory practice 'for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so.'" Feingold, 366 F.3d at 157-58 (citing New York Executive Law § 296(6)). NYSHRL § 296(1)(a) makes it an unlawful discriminatory practice "[f]or an employer . . . because of an individuals . . . national origin . . . to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." In addition, "there can be no . . . liability unless someone . . . engaged in actionable conduct." Kalp v. Kalmon Dolgin Affiliates of Long Island Inc., 11-CV-4000 (JG), 2013 WL 1232308, at *11 (E.D.N.Y. Mar. 27, 2013). "Based on this language,

several courts have [held] that a defendant who actually participates in the conduct giving rise to a discrimination claim may be held personally liable under the [NYSHRL]." <u>Wei Hong Zheng v. Wong</u>, 07-CV-4768 (FB)(JO), 2009 WL 2601313, at *7 (E.D.N.Y. Aug. 24, 2009).

Here, the amended complaint provides three allegations in support of the Plaintiff's claim pursuant to New York Law § 296(6): (1) "Defendants' conduct, individually and in their official capacity, violated State discrimination laws[;]" (2) "Defendants aided and abetted each other in culling Hispanic employees from the upper echelons of District employment[;]" and (3) "[t]his included colluding to manufacture work performance issues and voting to terminate Plaintiff for no legitimate reason." (Pl. Am. Compl. ¶¶ 90-92). "[I]t logically follows that 'liability must first be established as to the employer/principal before accessorial liability can be found as to an alleged aider and abettor.'" <u>Zheng</u>, 2009 WL 2601313, at *7(citing <u>DeWitt v. Lieberman</u>, 48 F. Supp. 2d 280, 293 (S.D.N.Y.1999)).

"A supervisor is an 'employer' for purposes of establishing liability under the NYSHRL if that supervisor 'actually participates in the conduct giving rise to [the] discrimination.'" <u>Feingold</u> 366 F.3d at 157 (citing <u>Tomka</u>, 66 F.3d at 1317). With regard to the Plaintiff's employment, Johnson's remark as a superintendent of the BOE renders her remark more probative of discrimination. <u>See</u> <u>Eldaghar v. City of N.Y. Dept. of Citywide Admin. Servs.</u>, No. 02–CV–9151, 2008 WL 2971467, at *9 (S.D.N.Y. July 31, 2008)(holding that a jury could reasonably find discriminatory animus based on remarks by the plaintiff's supervisors who had a considerable influence over the plaintiff's employment); <u>see also</u> <u>Owens v. N.Y.C. Hous. Auth.</u>, 934 F.2d 405, 410 (2d Cir. 1991)(holding that discriminatory oral comments by "individuals with substantial influence over [the plaintiff's] employment" are significant in determining whether an employment decision was motivated by discriminatory animus.) As a

result, Johnson is potentially liable under the NYSHRL. Therefore the individual Defendants may also be held liable as aiders and abettors.

Thus, the Court denies the Defendants' motion to dismiss the Plaintiff's claim pursuant to New York Executive Law § 296.

**D.  <u>As to Whether The Plaintiff Has Sufficiently Stated a Claim Pursuant to New York Civil Service Law § 75(b)</u>**

The Defendants also move to dismiss the Plaintiff's claim under New York's Whistleblower Statute, Civil Service Law § 75(b) on the grounds that the Plaintiff has failed to sufficiently allege either: (1) a violation of a law, rule, or regulation that endangers the public health or safety; (2) a violation that he believes constitutes an improper governmental action; and (3) a causal connection between the disclosure and the adverse employment action.

> "[I]n order to state a claim under § 75–b, plaintiff must allege the following: (1) an adverse personnel action; (2) disclosure of information to a governmental body (a) regarding a violation of a law, rule, or regulation that endangers public health or safety, or (b) which [he] reasonably believes to be true and which [he] reasonably believes constitutes an improper governmental action; and (3) a causal connection between the disclosure and the adverse personnel action."

<u>Portelos v. City of New York</u>, 12-CV-3141 (RRM)(VMS), 2013 WL 789460, at *2 (E.D.N.Y. Mar. 1, 2013) (citing <u>Burns v. Cook</u>, 458 F. Supp. 2d 29, 44–45 (N.D.N.Y. 2006).

The amended complaint alleges that the Plaintiff informed the New York State Department of Education and the Superintendent of Nassau Boces of the Defendants' unlawful practice of inflating grades in order to fraudulently procure additional funding from the State and the County. (Pl. Am. Compl. ¶¶ 95,98). The Plaintiff asserts that the "Defendants' actions violated several rules, regulations, and laws." (Pl. Am. Compl. ¶ 97). The Defendants contend

that these allegations, regardless of their validity, fail to adequately state a claim for which relief can be granted, and therefore should be dismissed.

The Defendants' main challenge is that "[u]nder New York law, claims alleging fraudulent economic practices do not constitute a danger to public health or safety." (Defs. Mem., at 10)(citing Shultz v. N. Am. Ins. Group, 34 F. Supp. 2d 866, 869 (W.D.N.Y. 1999)).  However, the Defendants support their claim by referring to New York Labor Law § 740, which is inapplicable here.  New York Civil Service Law § 75(b), unlike New York Labor Law §740, does not require a Plaintiff to allege a violation of a law, rule, or regulation that presents a danger to public health or safety.  Rather, under New York Civil Service Law § 75(b)(2)(a)(ii), the Plaintiff may alternatively allege what he reasonably believes to be true and which he reasonably believes constitutes an improper governmental action.

Here, the Plaintiff alleges what he believes to be an improper governmental action.  On a Rule 12(b)(6) motion, the Plaintiff's belief that the "Defendants' violated several rules, regulations, and laws," which constituted an improper governmental action, is sufficient. (Pl. Am. Compl. ¶ 97).

The Defendants also assert that "[t]he Plaintiff does not identify any rules, regulations or law that were violated," and that "no such rule or regulations existed, at the time, regarding grade changes." (Defs. Mem., at 11)  However, for pleading purposes, the complaint need not specify the actual law, rule, or regulation violated.  In deciding a motion to dismiss, the Court is required to accept the material facts alleged in the complaint as true and draw all reasonable inferences in the Plaintiff's favor.  Here, the Plaintiff has alleged that the Defendants violated State's education standards, rules, and regulations, in addition to the BOE's own rules and regulations

14

with respect to student grade changes. (Pl. Am. Compl. ¶¶ 48, 49). Thus, the Court finds that the Defendant's second contention does not bar the Plaintiff's claim.

The Defendants also argue that the Plaintiff has failed to adequately allege a causal connection pursuant **to** New York Civil Service Law § 75(b)(2)(a)(iii) because the Plaintiff has "alleged that he was terminated, at least in part, because of Hispanic origin and/or his exercise of his First Amendment free speech rights, which negates [the] causal connection between his termination and the claimed whistleblower status he insists he had." (Defs. Mem., at 15).

The Second Circuit has previously stated that "[t]he choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion . . . . A court ruling on a such a motion may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible." Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 185 (2d Cir. 2013). At the pleading stage, "alternative theories of liability are permissible". In re Am. Intern. Grp., Inc. 2008 Sec. Litig., 741 F. Supp. 2d 511, 534–535 (S.D.N.Y. 2010). For the foregoing reasons, the Defendants' motion to dismiss on this ground is denied.

Furthermore, the Defendants contend that the Plaintiff's claim pursuant to New York Civil Service Law § 75 should be dismissed because the Plaintiff failed to exhaust the grievance procedures under the applicable collective bargaining agreement. (Defs. Mem., at 17). Here, the Plaintiff has alleged in his amended complaint that "[t]his action and the claims alleged are patently not subject to any grievance procedure, or protocol, or any collective bargain agreement." (Pl. Am. Compl. ¶ 77). The Defendants acknowledge that "Plaintiff need not prove this allegation at the pleading stage." (Defs. Repl., at 6). Thus, this Court denies the Defendants'

motion to dismiss on the basis that the Plaintiff's claims are subject to any grievance procedure or protocol, or any collective bargaining agreement.

Finally, the Defendants assert that the *in pari delicto* doctrine bars the Plaintiff's retaliation claim based upon the Plaintiff's own conduct. (Defs. Repl., at 8). "The equitable defense of *in pari delicto,* which literally means 'in equal fault,' is rooted in the common-law notion that a plaintiff's recovery may be barred by his own wrongful conduct." Pinter v. Dahl, 486 U.S. 622, 632, 108 S. Ct. 2063, 2070, 100 L. Ed. 2d 658 (1988)(citing Bateman Eichler, Hill Richards, Inc. v. Berner, 472 U.S. 299, 311, 105 S. Ct. 2622, 2629, 86 L. Ed. 2d 215 (1985). The United States Supreme Court has held: "[A] private action for damages in these circumstances may be barred on the grounds of the plaintiff's own culpability only where (1) as a direct result of his own actions, the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress, and (2) preclusion of suit would not significantly interfere with the effective enforcement of the . . . laws and protection of the . . . public." Bateman, 472 U.S. at 311.

Here, the Defendants assert that *in pari delicto* doctrine forecloses the Plaintiff's retaliation claim because the Plaintiff created the computer program and algorithm that was used by the School District to round up failing grades to passing grades. (Defs. Repl., at 8). However, the Plaintiff alleges that he originally objected to this directive, but soon thereafter relented when "Johnson and Julius Brown threatened him with termination for insubordination and the denial of tenure." (Pl. Am. Compl. ¶ 55). At this point in litigation, the Court cannot serve as a fact finder or measure the relative culpability of either party.

Accordingly, the Defendants' motion to dismiss the cause of action pursuant to New York Civil Service Law § 75(b) is denied.

**E.  As to Whether Plaintiff States a Claim For a Violation of his Right to Free Speech**

The Defendants contend that the Plaintiff has failed to plead the necessary elements of a First Amendment claim of retaliation.  For a Plaintiff to sufficiently allege a claim of retaliation for the exercise of his first amendments rights, he must show: "(1) [his] speech was constitutionally protected, (2) [he] suffered an adverse employment action, and (3) there is a causal relationship between [his] utterance of the speech and the subsequent adverse employment action." Friel v. Cnty. of Nassau, 947 F. Supp. 2d 239, 255 (E.D.N.Y. 2013)(citations omitted).

In this case, it is undisputed that the Plaintiff has suffered an adverse employment action. The Court must thus determine whether the Plaintiff has alleged that his speech was constitutionally protected, and whether a causal relationship existed between the Plaintiff's speech and the adverse employment action.

   **1.  Whether Plaintiff Engaged in Constitutionally Protected Speech**

The United States Supreme Court has held that "[w]hen public employees make statements pursuant to their official duties, they are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti v. Ceballos, 547 U.S. 410, 422, 126 S. Ct. 1951, 1958, 164 L. Ed. 2d 689 (2006)(finding speech unprotected where the controlling factors of the plaintiff's expressions were made pursuant to official duties).  However, the First Amendment protects a public employee's speech from retaliation where the "employee spoke as a citizen on a matter of public concern." Id. at 418.  "As a rule of thumb, activities required of the employee as part of his employment duties are not performed 'as a citizen' if they are not 'the kind of activity' engaged in by citizens who do not work for the government." Dillon v. Suffolk Cnty. Dep't of Health Servs., 917 F. Supp. 2d

196, 205 (E.D.N.Y. 2013); Jackler v. Byrne, 658 F.3d 225, 238 (2d Cir. 2011); Garcetti, 547 U.S. at 423.

In determining whether the Plaintiff's speech is considered a matter of public concern, this Court "take[s] into account the content, form and context of a given statement as revealed by the record as a whole." Licopoli v. Mineola Union Free School Dist., 2010 WL 4961667, at *6 (E.D.N.Y. Dec. 1, 2010)(citing Ruotolo v. City of New York, 514 F.3d at 189). Speech is on a matter of public concern and therefore a protected activity "if it relates 'to any matter of political, social, or other concern to the community.'" Dillon., 917 F. Supp. at 205 (citing Connick v. Myers, 461 U.S. 138, 146, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983)). In addition, the Court will consider "whether the employee's speech was 'calculated to redress personal grievances or whether it had a broader public purpose.'" Dillon., 917 F. Supp. at 189 (citing Lewis v. Cowen, 165 F.3d 154, 163-64 (2d Cir. 1999). "[R]etaliation against the airing of generally personal grievances is not brought within the protection of the First Amendment by 'the mere fact that one or two of [a public employee's] comments could be construed broadly to implicate matters of public concern.'" Ruotolo, 514 F.3d at 190 (citing Ezekwo v. New York City Health & Hosp. Corp., 940 F.2d 775, 781 (2d Cir. 1991)).

Here, the Plaintiff wrote a letter to the Commissioner of the New York State Department of Education and the Superintendent of Nassau BOCES informing them of his belief that the Defendants were unlawfully and illegally inflating student grades to procure funding from the State and the County. With regard to whether the Plaintiff's expressions were made pursuant to his official duties, the Plaintiff asserts that his sole job functions as the Director of Technology and Chief Information Officer was to maintain and upgrade the Board Of Education's technological capabilities. (Pl. Am. Compl. ¶ 15). The Plaintiff further contends that changing of

grades and the policies related to that matter are not part of his job functions or in his job description. (Pl. Am. Compl. ¶ 105).

Viewed in a light most favorable to the Plaintiff, the amended complaint suggests that the Plaintiff's speech was motivated at least in part by concerns stemming from his role as a citizen. The Plaintiff's speech does not concern personal grievances and unquestionably addresses a matter of public concern to the community.

In Tucker v. City of New York, 07 CIV. 10367 (NRB), 2011 WL 2893077, at *5 (S.D.N.Y. July 15, 2011), the court stated that "allegations of corruption and misuse of public funds by . . . supervisors and coworkers [are] clearly matters of public concern."  The Plaintiff has set forth sufficient allegations to support the inference that his statements were motivated by a desire to protect the public from fraudulent, unlawful, and unethical conduct that would ultimately mislead parents and students. (Pl. Am. Compl. ¶ 51).  It is reasonable to infer that the surrounding community would be interested in knowing of alleged fraudulent conduct on behalf the BOE for the Hempstead School District.  Such matters concerning unlawful conduct within the School District plainly implicate a matter of public interest that affords First Amendment protection.

## 2. The Causal Connection Between Speech and Adverse Employment Action

For a First Amendment retaliation claim to succeed, "the causal connection must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action." Cotarelo v. Village of Sleepy Hollow Police Dep't, 460 F.3d 247, 251 (2d Cir. 2006).  A retaliatory motive must be "at least a 'substantial' or 'motivating' factor" behind the adverse action. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977).  Of relevance here, "[a] plaintiff may demonstrate causation . . . by showing that the protected activity was followed closely by

discriminatory treatment[.']" <u>Kirkweg v. New York City Dep't of Educ.</u>, 12 CIV. 2635 (WHP), 2013 WL 1651710 (S.D.N.Y. Apr. 4, 2013)(quoting <u>Hicks v. Baines</u>, 593 F.3d 159, 170 (2d Cir. 2010). "In order for 'mere temporal proximity between an employer's knowledge of [a] protected activity and an adverse employment action' to serve as sufficient evidence of a causal connection to establish a *prima facie* case, courts 'uniformly hold that the temporal proximity must be 'very close.''" <u>Isaac v. City of New York</u>, 701 F. Supp. 2d 477, 493 (S.D.N.Y. 2010)(citing <u>Clark County Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273–74, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001)).

In the present case, the Plaintiff alleges that "he was sent home the . . . next day after the Defendant's learned of his whistleblowing, he was then stripped of his ability to do his job, and soon thereafter submitted for termination." (Pl. Am. Compl. ¶ 61). At this stage in litigation, the Court finds that the amended complaint states a plausible retaliation claim based on a close temporal proximity between the alleged protected speech and adverse employment action. Therefore, the Court denies the Defendants' motion to dismiss the Plaintiff's First Amendment free speech claim.

**F. <u>As To Whether The Individual Defendants Are Entitled to Legislative Or Qualified Immunity</u>**

**1. <u>Legislative Immunity</u>**

The Defendants maintain that they are entitled to legislative immunity. The United States Supreme Court has held "that state and regional legislators are entitled to absolute immunity from liability under § 1983 for their legislative activities." <u>Bogan v. Scott-Harris</u>, 523 U.S. 44, 49, 118 S. Ct. 966, 970, 140 L. Ed. 2d 79 (1998). The Second Circuit has concluded that "[t]he test for determining whether an act is legislative 'turns on the nature of the act, rather than on the

motive or intent of the official performing it.'" Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206, 211 (2d Cir. 2003)(citing Bogan, 523 U.S. at 54.)

Here, it is clear that the Defendants actions with respect to the Plaintiff's employment were administrative, and not legislative, in nature. Stated otherwise, the Defendants did not engage in policymaking that is quintessentially legislative. See Harhay, 323 F.3d at 211(holding that the Board of Education's process for determining **a** single individual's employment situations was administrative in nature and should not be entitled to absolute legislative immunity); see also Lilly v. Lewiston-Porter Cent. Sch. Dist., 853 F. Supp. 2d 346, 355 (W.D.N.Y. 2011)(holding a local school board's action on employment decisions as administrative and not entitled to legislative immunity).

Thus, the Court denies the Defendants' motion to dismiss on the basis of legislative immunity.

### 2.  **Qualified Immunity**

The Defendants also maintain that they are entitled to qualified immunity. The doctrine of qualified immunity "protects public officials from liability for civil damages when . . . the defendant's action did not violate clearly established law, or . . . it was objectively reasonable for the defendant to believe that his action did not violate such law." Russo v. City of Bridgeport, 479 F.3d 196, 211 (2d Cir. 2007)(internal quotation marks omitted). A right is clearly established when, "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L .Ed. 2d 523 (1987). Furthermore, the constitutional right and relevant law the officials are alleged to have violated must have been clearly established in a "particularized sense," so that a reasonable official would have known that his actions violated the plaintiff's rights. See id. at 640.

The Second Circuit has noted that, "[u]sually, the defense of qualified immunity cannot support the grant of a [Rule] 12(b)(6) motion for failure to state a claim upon which relief can be granted." Green v. Maraio, 722 F.2d 1013, 1018 (2d Cir. 1983). A defendant presenting a qualified immunity defense on a Rule 12(b)(6) motion "faces a formidable hurdle . . . and is usually not successful. Field Day, LLC v. County of Suffolk, 463 F.3d 167, 191–92 (2d Cir. 2006). "The defense will succeed only where entitlement to qualified immunity can be established 'based [solely] on facts appearing on the face of the complaint.'" Bryant v. Steele, 13-CV-5234 (ADS)(GRB), 2014 WL 2475608, at *10 (E.D.N.Y. June 3, 2014)(citing McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004). For these reasons, a 12(b)(6) motion is a mismatch for a qualified immunity defense and almost always a improper basis for dismissal. See Barnett v. Mount Vernon Police Dep't, 523 F. App'x 811, 813 (2d Cir. 2013).

However, "[e]ven when a plaintiff's federal rights are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified or good faith immunity might still be available as a bar to plaintiff's suit if it was objectively reasonable for the public official to believe that his acts did not violate those rights.'' Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991). The Defendants bear the burden of showing the objective reasonableness of the acts in question. See Tellier v. Fields, 280 F.3d 69, 84 (2d Cir. 2000).

The Defendants assert that they are entitled to qualified immunity for the following reasons: (1) the Plaintiff has failed to sufficiently state a claim; (2) the Defendants did not deprive the Plaintiff of an actual constitutional right that is clearly established; and (3) it was objectively reasonable for the Defendants to exercise their adverse employment actions with regard to the Plaintiff. (Defs. Mem., at 23).

Here, the Court has already determined that the Plaintiff has adequately alleged claims for all the causes of action.  Furthermore, the Court finds that the Plaintiff's rights were clearly established for all claims.  For a right to be ''clearly established'' for purposes of qualified immunity, ''it is sufficient if decisions of the Supreme Court or of the appropriate circuit have defined the contours of the right with reasonable specificity.'' <u>Russell v. Coughlin</u>, 910 F.2d 75, 78 (2d Cir. 1990).  As provided above, the Supreme Court and/or the Second Circuit have adequately defined the contours of the Plaintiff's rights.  Furthermore, the Defendants have not met their burden of showing that their actions were objectively reasonable.

Accordingly, the Court denies the Defendants' motion to dismiss based on qualified immunity.

### III.    CONCLUSION

For the foregoing reasons, it is hereby order that the Defendants' motion to dismiss is denied in all respects.  In particular, it is hereby:

**ORDERED** that the Defendants' motion to dismiss the Plaintiff's first cause of action, brought pursuant to Title VII and 42 U.S.C. § 1981, on the basis of national origin discrimination, is denied, and it is further

**ORDERED** that the Defendants' motion to dismiss the Plaintiff's second cause of action, brought pursuant to New York Executive Law § 296, alleging the aiding and abetting of discrimination against employees of Hispanic origin, is denied, and it is further

**ORDERED** that the Defendants' motion to dismiss the Plaintiff's third cause of action, brought pursuant to New York Civil Service Law § 75, alleging retaliation, is denied, and it is further

**ORDERED** that the Defendants' motion to dismiss the Plaintiff's fourth cause of action,

brought under the First Amendment, is denied.

**SO ORDERED.**
July 16, 2014

                                   _____*Arthur D. Spatt*_____
                                        Arthur D. Spatt
                                        United States District Judge